Good morning. May it please the court. My name is Corrie Hong and I represent Petitioner Miriam Gomez. I wish to reserve two minutes for rebuttal and I will watch the clock. I will discuss jurisdiction, the transit ban, and then the 212A7 inadmissibility ground. First, under 1252A1, Congress gives federal courts review over final orders of removal unless Congress expressly takes away jurisdiction under section A2. The government argues that somehow A2A somehow divests jurisdiction over Ms. Gomez's claims, but notably the government does not point to the express words that actually divest jurisdiction over claims that someone was wrongfully denied asylum through a dead wrong interpretation of the law and someone was wrongfully placed in expedited removal proceedings. A2 has no such limitation. Congress could have written A2 to prevent federal review over anything related to the expedited removal process. Instead, it has four surgical subsections that limit federal court review over four specific and narrow parts of the expedited removal process, which are its operation under Roman numeral I, its discretionary invocation under II, the procedures used under Roman numeral IV, and the merits of the credible fear finding under subsection III. Under Kukana, there is a presumption that judicial review exists unless Congress takes it away, and the government is simply asking this court to write a statute that Congress did not. Counsel, let me ask you, as I understand it, part of your argument is that we have to have jurisdiction over colorable constitutional claims if there is no other forum for those claims. Is that a correct understanding of part of your position? Yes, Your Honor. And that would not cover your second argument, would it? The one about checking the wrong box on the form that is not having the right formula for an expedited removal proceeding? Your Honor, I would submit that it is because she was wrongfully placed in the expedited removal process. Well, in substance, she was not. She meets all the criteria. So where is the possible prejudice, which is always a requirement of a due process claim? That is, she was a noncitizen, she was apprehended at the border, and she met the other statutory criteria for expedited removal. I don't read your briefing as arguing factually to the contrary than that. Your Honor, the disagreement we have is over. My argument is supported under Torres v. Barr under the en banc decision that gave the different meaning to 1182A7 versus A6A. Counsel, that doesn't answer my question. Factually, are you claiming that your client was not eligible for expedited removal as a matter of fact? Yes. And I say that because... Specifically, how? Was she a citizen? Was she not apprehended at the border? What is the fact that, in your view, makes her not eligible for expedited removal? She was apprehended in the interior. Whereas the expedited proceedings apply to those who present at the port of entry, and they're subject under A7, or if they're at the interior and found with fraudulent documents, which would be under A6C. She was apprehended in the border without being admitted or paroled, which is under A6A. And in AR 37, the implementing regulations that support which grounds of inadmissibility will support a final order of expedited removal, there are six subsections, and A6A are not among them. And so for this reason, this was not a properly sustained inadmissibility ground. She's not factually eligible for A7A, which is what she was charged under. And as a result... But in Thurisigium, she seems similarly situated to the petitioner there, and yet that was done as an A7, and the Supreme Court proceeded accordingly. Your argument seems to overrule Thurisigium on its facts. Well, Thurigazem did not challenge that he was properly placed under A7A, and he was found within 25 yards of the border. So that in effectuate was the port of entry where he was apprehended. Where she was apprehended at some point in the interior, the Ajo border station where she was processed is 37 miles from the border. And so she was processed well beyond the initial port of entry of Lukeville, which is where she said she had entered, that's 37 miles away. So although in Thurigazem, he was right there at the port of entry, she was not. And the best case that I have to support this argument would be the BIA decision of the Alcarez, which is the 2017 BIA decision, where there a returning LPR was charged under A7. It went up to the Ninth Circuit, and on remand, the BIA said, yes, she was improperly placed under A7, and we're going to remand it for the DHS to properly charge her under the correct portability ground. And this is important because this is a question that she never should have been in expedited removal. As someone who was apprehended in the interior, she's admissible under A6A, which the expedited removal process does not apply to her in any way, shape or form. The federal courts cannot look away from an error like that, which is entirely structural and is complete. Basically, she never should have been there, which is a very different type of claim, which is trying to challenge the forum, the evidence, the procedure, the process of the expedited removal process. But A1 seems very clearly by its terms to carve out from the jurisdiction to file a petition for review. It carves out orders of removal without a hearing pursuant to Section 1225B1, and then those are covered by A2, and then A2 directs you to E, which says the only remedy is a habeas petition with a limited focus. So I don't understand how this ends up as a petition for review in this court. Your Honor, I have two responses. A1 says that expedited removal orders without hearings don't have review. Are you saying that that means to carve out the cases where there's an IJ review? Yes, Your Honor, and there's some common sense support for that because at the port of entry, if someone shows up with fraudulent documents or someone shows without a reason to be in the United States, the frontline officer are empowered to turn them away without any further review. If they say, I have a fear of asylum, which is what she did, they are then placed in a separate process where they are allowed to have credible interview, where they are allowed to then speak with an officer. But I think the second response, even if you disagree with me on this point, I would like to highlight that there is a second error, which is at issue in this case and in the substance case, which is that there's nothing in A2 that prevents a federal court from correcting a quote dead wrong legal interpretation that Ms. Gomez is not eligible for asylum because she had stepped foot in Mexico. Justice Breyers, there gave some concurrence throughout the hypothetical that the federal courts must be able to correct the dead wrong legal interpretation if an asylum officer would say that Judaism is not a religion. And this has to be right when something goes wrong, even if... Prosecution was a habeas petition. That's my point. Maybe you have arguments that either E2 needs to be read more flexibly or that, you know, you can distinguish Thurisidium and that due process requires more. But it's talking about the jurisdiction in E2. I don't see how it lands in a petition for review under 1252A. Your Honor, if your position was correct, it would render superfluous the subsections under A2A, which have four subsections saying what the federal courts can't review. If Congress simply said everything has to go to habeas, they could have made it that clear. But there are four subsections then that say the federal court can't review the process, the operation, and the merits. But then the presumption is that it can review anything else such as this, which is the constitutional complete deprivation of review. And again, I think the meaning of that is that Congress wanted the expedited removal to go quickly. They did not want the federal courts to kind of be policing and interfering and determine what evidence can be processed or was there adequate review. Instead, this type of claim is completely outside, saying that she was denied the entire process when the transit ban, which is recognized as an illegal regulation, which has been declared an illegal law, it did not deprive her of the right to apply for asylum. If there are no further questions, may I reserve my remaining time? You may do that. We'll hear next from the government. May it please the court. My name is Andrew O'Malley. I represent the Attorney General of the United States. This court lacks jurisdiction in this case and should dismiss the petition for review accordingly. The petitioner asked this court to review what she refers to as structural errors in the agency's decisions, but she can point to no statutory provision that would give this court the authority to review such issues. Where was she apprehended? What does the record show? So the record shows the record that was filed shows that she was apprehended sometime between when she entered on September 13th at 1030 PM, which is what she says in her, in her statement and being interviewed on September 14th. So clearly, shortly after her entry waiting across the river on September 13th, the Department of Homeland Security has given me the records relating to its apprehension of her, which are not part of the record here, which show that she was apprehended at 1130 PM on September 13th. So within an hour from when she said she was, she entered and she was apprehended on Border Road, which runs along the border and was then transferred to the, to the Border Patrol Station and given the interview. So she was, she was apprehended at the border, Your Honor. And I think. What is your response to the general arguments that if there is a jurisdiction. Well, as a court of limited jurisdiction, this court has the jurisdiction that is granted to it by Congress. And I'm not sure where you can locate the authority to do that. It's certainly not in 1252 A2D. And this court has repeatedly held that at this point in Singh, you know, Pena was a little bit iffy on it, whether or not the suspension clause requires it, but between Singh and, and, and again, Guerriere, the new, the newest decision, even under the amended opinion, it's clear that this is not the forum to raise those case, those claims, to the extent that there is any jurisdiction or any review of these, of these decisions as to be had in habeas proceedings, not in a direct appeal to this court. What is your response to the statutory argument that counsel is making, which is that there are specific carve outs of non-jurisdiction. And this is not one of them. I think your honor, this court has said that, that this is a provision, this, this statutory jurisdiction stripping provision that shows when Congress wanted to eliminate all jurisdiction over an area, this is how they do it. It is very specific that you have no jurisdiction over any, any decision or any issue relating to an expedited removal order. And the Congress makes that very, very clear in 1252 a two saying you have no jurisdiction over anything related to these decisions, any determination or anything about the operation except as provided in 1252 E, which is the habeas provision and very limited circumstances there. And again, this court has said that 1252 a two D does not restore its jurisdiction to constitutional claims or questions of law with respect to expedited removal orders. Even when doing it in light of the presumption of the reviewability of administrative action, this is not the area where this court may assume jurisdiction, not on a direct appeal from an expedited removal order. I have a question also about the, the merits of the transit bar issue. As you are well aware of that district court in D in the district of Louisville, was told that the transit bar rule was invalid because of failure of notice and comment. And in the ninth circuit, at least we have applied that kind of a holding retroactively. That is a, an invalid rule for failure of notice and comment is void of initiative. So what, what is your counter to that as to why the transit bar existed legally validly at the time that this proceeding occurred? Well, a few points on that, your honor. First of all, there's no jurisdictional hook that can get you there. So to review the application, I'd like you to respond. Just not to concede. Well, two points on that. One is that I don't think if you do get there, I don't think it's a problem in this case specifically, because while the asylum officer clearly applied the transit bar in this proceeding, the immigration judge did not, at least not that's discernible from the record, right? Under the transit bar or the transit rule, the asylum officer has to say you didn't show a significant possibility of establishing eligibility for asylum because you traveled through these countries and then go on and review withholding and cap under a reasonable possibility standard, which reflects the different burdens of proof between the two. And then on DeNovo review before the immigration judge, the immigration judge is supposed to give DeNovo review of that, the application of the transit rule, and then review the reasonable possibility that didn't happen here. What happened was the immigration judge said you didn't demonstrate a significant possibility of persecution in your home country by individuals that the government is unwilling or unable to control. That's eligibility for relief, right? That's, that's the burden of proof for asylum. The immigration judge didn't review the transit bar and just went straight to asylum. So I don't think if you get there, I don't think it's a problem. Because she had the process under DeNovo review with the immigration judge. However, it is the government's position that these orders that were, that were issued at the time, the transit bar was in place are or was, was, was not enjoined are valid exercises of the law. Nothing has been. Well, is that because, well, is that because the CAIR case is on appeal, or is that because you disagree with the ninth circuits use of retroactivity principles? I don't know that the retroactivity argument has been made in terms of the, the transit rule or, or anybody has actually. Well, I'm asking, regardless, we have a couple of cases. That say that when there's a failure to comply with notice and comment requirements, the previous rule that was that existed before the non notice and comment invalid rule is revived. So are you just not familiar with those, or I'm not really sure what your position is. I'm not really familiar with how it applies to the transit rule simply because the argument here is that this court can't get to it in the first place. And again, even if it did, I think the immigration judge appropriately or did not apply the transit rules, but really has no bearing on the case at the end of the day. But the argument here is that there's no jurisdiction there anyway. And I'd also like to touch on in the time that we have petitioners argument with respect to the intermissibility provision, this idea that she was not properly placed in expedited removal proceedings, which I think is directly contrary to the statutory provisions. It, it, it makes, it doesn't make any sense under the actual statutory provisions of 1225 B where the attorney general is granted authority to designate individuals in petitioner circumstances for expedited removal. And to the extent that petitioner disagrees with that or thinks that that's an inappropriate use of the inadmissibility provision, her remedy for that was to challenge that in the district court after its issuance under 1252 E3, that was to be had at the district court for the district of Columbia within 60 days, I believe, of the issuance of those provisions. There's simply no way. Suppose that, um, you know, we had a petitioner who was, you know, living in Phoenix for five years, had been here a long time, was here illegally. And they pick the person up, say that they're an A7 person, put them into expedited removal. Would there, who would there be anyone to hear that claim that I'm factually not covered by this? No, Your Honor. There's not, not under this provision. So they, there's nothing that anyone could do. That person would be sent out in complete defiance of everything Congress has written. I think, Your Honor, I think there's, there's some concern there with, with how long the individual has been in the country. Um, I think that that's to the extent that there's any review over expedited removal orders and constitutional issues or questions of law of that nature. That's where the play is, um, based on the, uh, Supreme Court's decision in Thurisdgian. But, um, as a general matter, if somebody is placed in those proceedings at the border and there's no, there's no jurisdiction to review that now. Except in habeas, right? I mean, you would, you would, I think, have to concede that 1252E2 would permit a review of that situation. I, you know, I don't, I don't know whether it would or whether it wouldn't. It's not really an issue that petitioner has raised here as to whether or not she could get relief in habeas. That's an issue that Judge Collins is asking about, whether there's any judicial review of something blatantly wrong. Well, that's, that's the, the, the, the reason that things were so contentious between the concurrence and the dissent in Thurisdgian is what's the scope of the review? Under habeas proceedings and, and the decision was, no, there's no, there's no jurisdiction to review these issues. And that doesn't violate the due process clause. And it also doesn't violate the suspension clause. These people, these individuals were specifically designated by Congress for these proceedings, and they only get that, that process that is created by the statute and nothing more. Now, to the extent that, that, that, that there's debate about whether there's greater process due for individuals who, who proceed further into the interior or here for longer, that question I think is, is a little bit hazy after the, the, the decision in Thurisdgian simply because the court recognized that the attorney general has the authority to designate people who have been here for up to two years for these provisions, which is a longer time than what is actually provided for by the attorney general's regulations at this point. But that's not an issue that needs to be decided in this case, because as we've said, she was apprehended at the border. She was properly put into expedited removal proceedings and was given the process that she was due. If there's no further questions. It does not appear that there are. Thank you. Thank you. Ms. Hong, you have some time remaining. Thank you, your honor. I have three points. First, I just want to highlight the document about the actual time of her apprehension is not in the record. We haven't seen it. And so obviously we're contesting that. So that in our view, she did effectuate an entry, which is what the line that judge Alito said was a very significant one. The second point, Pena got it right. There is a colorable constitutional claim that exists under the statute. The government said that there is no review under a two a because he said in his words that unless it's under 1252 E there's no jurisdiction under expedited removal. Those are his words. The words that Congress used are much more precise under two a it says not being any other habeas corpus provision, no court shall have jurisdiction to review. And then there's I double I triple I and, and Roman numeral four that involves the operation, the procedures, the regulations, and the merits that does not foreclose. What we have here, what judge Friar said was dead wrong interpretations of law and the wrongful placement of people in expedited removal on the third point. And I understand I have an uphill battle. I send skepticism by the court, but if I could under the question of whether she was wrongfully charged under a seven, the fifth circuit case that I filed in the rule 28 J letter shows very much that she was because they're the person who was seen swimming the Rio Grande was apprehended in the interior and was properly charged under a six a and given all the benefits of regular removal proceedings. That's what should have happened to miss Gomez. And back to judge Collins question about, well, what happens if someone's wrongfully picked up, which is what we say she is is that under 1252 E, there is no remedy under there. So I have, I have a question about the case in, in the case that you cited, the person was in fact charged under a six, a little high, but in your view, does the case require that or is that simply a statement of what happened? I'm showing that's what happened, which is the procedure. Well, but the fifth circuit case doesn't hold that it's not contested issues. So it's simply illustrative that in another jurisdiction, another procedure was followed. That's all it shows. Yes, Your Honor. It is dicta and it's, and it's shown only to show that this is the proper way to, to charge someone. And can you address counsel's point that the, the transit bar was not applied by the IJ that it was applied by the, the officer, but was not applied by the IJ in reviewing the determination. Your Honor, the record doesn't support that. The, the IJ rubber stamped the, the, the decision, the IJ never made that finding by saying. On page 10 of the AR and when the IJ gives the ruling, she says, based on the evidence, you have not established a significant possibility of harm by the government. That's not the transit bar standard. And then her order on AR three also doesn't use the transit bar form. It uses the regular form with significant possibility, being the standard. So there's just nothing in the IJ's ruling that says it's using the transit bar standard. Your Honor, under the, at AR 43, the asylum officer very much does use the transit bar standard. I agree with that. That was premise of my question. Very clearly the asylum officer did, but the statute says the IJ is to conduct a de novo review. And the IJ did a de novo review under the non-transit bar standard. So doesn't that eliminate any error of applying the transit bar? Your Honor, I, I read the record differently where the IJ, if she wanted to cure it, she could have said the transit bar is illegal and invalid. And, and, or in the, in the interest of caution, I will apply it, but there's no showing that she did. Rather it shows that the significant possibility of persecution is under withholding standard. There's no showing that she actually said the magic words, the 10% threshold is met. So if there's even ambiguity, I would submit that the proper remedy is send it back to the IJ to get clarification about whether she intended that persecution standard to be withholding and asylum or simply withholding, which is how I read the record. But Your Honor, I'm sorry. What's Your Honor? I was just saying, thank you. Okay. Time has expired and I believe that we understand the positions that both of you have taken. We appreciate the arguments that both of you have presented. They've been very helpful and the case just argued is submitted.
judges: GRABER, COLLINS, Groves